## THOMAS F. NUTTER *v*. LEXINGTON AND WEST CAMBRIDGE RAILROAD COMPANY.

A railroad corporation voted to issue six hundred additional shares, and to allow each stockholder to take one new share for every two shares already held by him, provided he should by a certain day subscribe therefor, and pay a part of the price, and give notes for the remainder. *Held,* that there was no implied condition, that the whole number of six hundred new shares should be issued; and that the failure of the corporation to issue that number was no ground for maintaining an action by a stockholder, to recover back money so paid by him, nor for defeating an action on notes so given by him.

ACTION OF CONTRACT by the assignee of James Gould, an insolvent debtor, for money paid by the latter to the defendants,

and for rent of a counting-room. The defendants denied their liability for money paid, admitted their liability for rent, and filed in set-off a note of the plaintiff for $100, given under the circumstances stated in the bill of exceptions, the material part of which, as allowed by *Perkins*, J., who presided at the trial in the court of common pleas, was thus:

" With regard to the money paid by the said Gould, and now sought to be recovered back, it appeared that in July 1847 the defendants were largely indebted, and that at a meeting of the directors in that month (the said Gould being one of said directors, and being present) it was voted ' that the committee on finance inquire into the expediency of creating a sufficient amount of new stock to pay the outstanding liabilities of the company, and report at the next meeting.' At a subsequent meeting said committee made a report, whereupon it was voted, ' that six hundred shares of the capital stock of this company be issued at $70 a share, payable in instalments, as follows, namely, $20 on the 15th day of September next, $25 on the 1st day of November next, and $25 on the 1st day of December next;' and ' that each stockholder be allowed to take one new share for every two shares that may be standing in his name on the 10th day of September next, provided that, on the 15th day of September next, he subscribes for the same, and at the same time pays the first and gives his promissory notes for the two remaining instalments.' The above votes were submitted to the stockholders by a circular sent to each.

" The plaintiff's insolvent, being entitled to subscribe for four shares on the 15th of September, paid the sum of eighty dollars, and gave his two notes of $100 each, according to the terms of said vote. The note filed in set-off is one of these.

" There was no subscription paper; but each stockholder who wished or agreed to take the stock paid the cash instalment and gave his notes agreeably to the vote, and took a receipt from the treasurer, agreeing to issue the shares on payment of the notes. Only seventy nine shares were ever subscribed for, or agreed to be taken, or issued.

" The plaintiff claimed to recover back the $80 so paid, on the ground that the contract and subscription was a conditional one, namely, that the whole amount of the six hundred shares should be issued; and that, as said condition had not been complied with, but only a small portion of said six hundred shares had been issued, the plaintiff's insolvent was not obliged to take said four shares, and the corporation were liable for the money paid by him. The court ruled that the plaintiff was not entitled to recover. The jury returned a verdict for the defendants. The plaintiff excepted."

*T. F. Nutter, pro se,* cited *Cabot & West Springfield Bridge* v. *Chapin,* 6 Cush. 50; *Salem Milldam* v. *Ropes,* 6 Pick. 23; *Worcester & Nashua Railroad* v. *Hinds,* 8 Cush. 110; *Littleton Manuf. Co.* v. *Parker,* 14 N. H. 543.

*J. Dana,* for the defendants.

MERRICK, J. This action is prosecuted by the plaintiff as assignee of James Gould, an insolvent debtor, for his benefit. The money which he now claims that he has a right to recover was, together with the promissory note filed in set-off, received of Gould by the defendants, in payment for four shares in their company. But the plaintiff contends that Gould agreed to take and pay for those shares only upon the condition that the defendants should issue and dispose of six hundred new shares of the capital stock of the company, at the price of seventy dollars a share; and that, as so many shares were never issued or disposed of by them, there was a failure in the performance of the contract on their part, which absolved him from all liability upon his note, and entitled him to recover back the money he had already paid.

It is not pretended that any such conditior was stated in express terms in the agreement between the parties; but the plaintiff insists that it is necessarily to be inferred from the transaction itself, and the end and purpose which they respectively had in view; and, in support of this position, he cites and relies upon various cases in which it has been held that original subscribers for stock in corporations are not always considered as having assumed absolute and unconditional obliga-

tions.  It is undoubtedly true that such subscribers, promising to take a specified number of shares of the stock of a corporation established to accomplish some special enterprise, or to engage in and carry on some particular kind of trade or manufacture, involving an outlay and expense of an unascertained and uncertain amount, are not bound to pay assessments made to raise funds for the general objects of the corporation, unless the whole amount of the capital stock, or the whole number of shares of which it is to consist, have been first determined and subscribed for.  *Salem Milldam* v. *Ropes*, 6 Pick. 23.  *Central Turnpike* v. *Valentine*, 10 Pick. 142.  In *Cabot & West Springfield Bridge* v. *Chapin*, 6 Cush. 50, it was held that the action could not be maintained, because some of the shares subscribed for were not to be paid for in money, but in the depreciated stock of another corporation.  And in a still later case it was determined that the defendant was not liable upon his promise, for the reason that, as to the amount of the capital stock, the number of shares of which it was to consist had not been duly fixed and determined.  *Worcester & Nashua Railroad* v. *Hinds*, 8 Cush. 110.

But the transaction between Gould and the defendants was of a different character, and does not come within the principle of any of these cases.  In relation to the four shares which Gould contracted to take, or to purchase—however the transaction may be described—when he paid the money now sought to be recovered, and gave his promissory note for the balance, he was an original subscriber for stock.  Such subscriptions had been received by the defendants at an earlier period; and with the funds derived from the stock so disposed of they had proceeded to construct their road, and execute the general purposes of the corporation.  But in June 1847 their funds were exhausted, and they were compelled to find additional means with which to complete their work.  In this condition of things, the directors voted to issue and dispose of six hundred new shares of the capital stock, at seventy dollars a share; giving to those persons who were then stockholders a right to take one of the new for every two of the old shares of which they should be the pro-

prietors on the 10th of the ensuing month of September. This imposed upon the stockholders no obligation whatever. They were as free to decline, as they were to take any of the new shares. It was a privilege which they might waive or avail themselves of at their pleasure. If the stockholders should not, within the time limited for them to make their election, take the new shares, by a necessary implication the shares were then to be offered to the public at large. And no one could tell, until it had been tested by an actual trial, whether the project would succeed or fail. Every one, from the first to the purchaser of the last remaining unsold share, took upon himself, to the extent of his own contract, the hazard of a disposition of the whole of the shares to be newly created. But every one who paid, and received a certificate for the shares paid for, obtained all that the corporation contracted to transfer to him. It is conceded that Gould had, or might have had, on payment of the notes which he gave, certificates for the shares for which the money was paid and the notes given. That was all which, by his contract under the vote of the directors, he was entitled to receive, or which the corporation were bound to convey to him. They did not contract either that all the new shares should be sold, or that any particular purchase should turn out to be advantageous and profitable to the purchaser. Of the expe-. diency of such a purchase every stockholder, as well as every one else, was left to judge for himself.

No question has been raised of the right of the corporation to issue and dispose of these six hundred new shares. Having that right, they were possessed of property to be sold upon such terms as they chose to prescribe, if they could find purchasers in the market ready to accept their offer. Gould chose to accept it; and by paying his money and giving his notes, according to what was required of him by the corporation upon such acceptance, he became the purchaser of the shares, and could not afterwards renounce or rescind the contract which he had entered into. He can make therefore no defence to his notes, and has no right to reclaim the money he has paid. *Exceptions overruled.*